United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Kevin P. McDonnell, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 16-22044-Civ-Scola |
| | ) |
| Royal Caribbean Cruises Ltd., | ) |
| Defendant. | ) |

### Order Granting in Part and Denying in Part Defendant's Amended Motion for Summary Judgment

Plaintiff Kevin P. McDonnell says he "suffered severe injuries, requiring surgery," when he fell stepping down onto the floor of a multipurpose, auditorium-type room while aboard a Royal Caribbean cruise ship. (Compl. ¶ 10, ECF No. 3.) McDonnell alleges that the step down to the floor was unreasonably dangerous because its depth was not apparent and was much deeper than the rise of the staircase leading down to it. (*Id.* at ¶ 16.) In seeking summary judgment, Defendant Royal Caribbean Cruises Ltd. contends it is not liable for McDonnell's injuries because: (1) the step was not dangerous; or, if it was, (2) the depth of the step to the floor was open and obvious; (3) Royal Caribbean had neither actual nor constructive notice of the dangerousness of the step; and (4) Royal Caribbean was not involved in the design of the step. (Def.'s Mot. for Summary Judgment, ECF No. 41.) While the Court finds Royal Caribbean's last point well taken, there are indeed genuine issues of material fact with respect to the first three issues raised. The Court therefore **grants in part and denies in part** Royal Caribbean's motion for summary judgment (**ECF No. 41**) as follows.

1. **Legal Standard**

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case.*" Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual

inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, documents, depositions, answers to interrogatories, admissions, or other materials, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c)(1)(A). The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Id.* at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Morrison*, 323 F.3d at 924.

## 2. Brief Factual Background

McDonnell embarked on a cruise aboard Royal Caribbean's *Oasis of the Seas* in September 2015. (Def.'s Mot. at 2; Pl.'s Resp., ECF No. 42, 3.) On the first day of the cruise, he attended a happy-hour welcome event in a multi-purpose auditorium, which also doubles as an ice-skating rink. (Def.'s Mot. at 4, 6; Pl.'s Resp. at 3, 5.) This space, referred to as "Studio B," is comprised of a u-shaped stadium-style seating area encircling a stage floor which is located below the seating. (Def.'s Mot. at 4; Pl.'s Resp. at 3.) When Studio B is being used as an ice skating rink, the wooden stage floor is removed to expose the ice underneath. (Not. of Filing, Campos Dep. 64:6–10, ECF No. 42-3, 16.) During the welcome event, McDonnell acknowledged watching other passengers navigate the stairs down to the stage floor with difficulty. (Def.'s Mot. at 4; Pl.'s Resp. at 3.) He also recalled that, during the welcome event, other passengers were assisted when stepping from the seating area down to the stage floor and he heard warnings that night, advising people to "be careful of the step down." (Def.'s Mot. at 4; Pl.'s Resp. at 3.)

Five days later, McDonnell attended another cruise event called the "Quest Game Show." (Def.'s Mot. at 4; Pl.'s Resp. at 3.) At some point during the game, McDonnell says he was invited to the stage. (Def.'s Mot. at 2; Pl.'s

Resp. at 3.) As he attempted to step onto the stage floor, however, McDonnell fell because, as he claims, he had not discerned a twelve-inch, or more, drop from the seating area to the floor. (Def.'s Mot. at 6; Pl.'s Resp. at 3, 5; Not. of Filing, McDonnell Dep. 92:5–18, ECF No. 32, 26.) As a result of the fall, McDonnell claims to have sustained injuries to "both his body and mind." (Compl. ¶ 13.) McDonnell asserts that because he entered Studio B through a different door, on the night of his fall, and because the room differed in appearance as compared to the day of the welcome event, he didn't realize he had been in the same room five days earlier. (Pl.'s Resp. at 3.)

### 3. Discussion

Federal maritime law governs the substantive issues in this case. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). In order to satisfy his burden of proof in this negligence action, McDonnell must show: (1) Royal Caribbean had a duty to protect him from a particular injury; (2) Royal Caribbean breached that duty; (3) the breach was the proximate cause of his injuries; and (4) he suffered damages. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012); *Hasenfus v. Secord*, 962 F.2d 1556, 1559–60 (11th Cir. 1992). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of [his] complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236–37 (S.D. Fla. 2006) (Moreno, J.). Royal Caribbean's motion centers on issues related to the breach element. "Regarding the breach element, 'the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition.'" *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)).

### A. McDonnell has established genuine issues of material fact with respect to whether the step was a dangerous condition.

As a threshold issue, a plaintiff must establish that a dangerous condition existed. "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-CV-22105-UU, 2013 WL 11261341, at *5 (S.D. Fla. Apr. 2, 2013) (Ungaro, J.)

In arguing the step was not dangerous, Royal Caribbean points to the fact that in the three years prior to McDonnell's fall, there were only five reported incidents relating to the stairs out of approximately 218,400 passengers who participated in the Quest Game aboard the same ship. (Def.'s Mot. at 11.) Royal Caribbean also relies on its "review of repair orders in Studio B from 2012 to 2015" which "shows no indication there were any issues relating to the subject stairway." (*Id.*) In response, however, McDonnell has presented evidence demonstrating a genuine issue of material fact. To begin with, McDonnell's expert, Frank Fore, submitted a declaration indicating, among other things: (1) the entirety of the staircase was steeper, overall, than permitted by safety standards; (2) the variation between the steps leading to the floor, or stage, of the studio was excessive; (3) the absence of a handrail at the bottom of the stairs or step leading to the floor was in violation of safety standards; (4) the riser height of the final step itself was double the height of all the other steps leading down to the stage floor; and (5) this height difference was not discernable or conspicuous. (Fore Stmt., ECF No. 42-2.) Based on this evidence, McDonnell has established genuine issues of material fact regarding whether or not the step leading to the stage floor was dangerous.

Royal Caribbean's assertion that conclusory allegations must be supported by specific facts, while a correct statement of the law, does not support the granting of summary judgment with respect to the dangerous condition of the step. Without actual examples of or citations to the specific allegations Royal Caribbean finds lacking in factual support, the Court is unable to assess the applicability of this basic standard to this case. Royal Caribbean's further contention then, that the Court should disregard Fore's declaration, without more, fails.

**B. Royal Caribbean is not entitled to summary judgment on McDonnell's allegation of Royal Caribbean's failure to warn.**

"[U]nder federal maritime law, an operator of a cruise ship has a duty to warn of known dangers that are not open and obvious." *Frasca*, 654 F. App'x at 952. Royal Caribbean argues that it was under no duty to warn because the danger was either (1) open and obvious, or, in the alternative, (2) not known. In opposition, McDonnell responds (a) the danger related to the step was, in fact, *not* open and obvious, or (b) even if it was, Royal Caribbean still had a duty to warn, and (c) Royal Caribbean was indeed on notice of the danger. The Court finds Royal Caribbean's arguments regarding both whether the danger was open and obvious and whether it had notice unavailing.

### (1) Open and Obvious

To begin with, in assessing whether the danger of the stepdown was open and obvious, the Court's "analysis is guided by the 'reasonable person' standard." *Frasca*, 654 F. App'x at 952 (quoting *Lamb by Shepard v. Sears, Roebuck & Co.*, 1 F.3d 1184, 1189–90 (11th Cir. 1993). In other words, the plaintiff's "subjective observations are irrelevant in determining whether a duty to warn existed." *Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1346, (S.D. Fla. 2015) (Moore, J.). Here then, the question is whether a reasonable person would have perceived the depth or even the existence of the final step down to the stage floor. Royal Caribbean contends McDonnell "has not presented any evidence to show that any danger posed by the subject stairway in Studio B was not apparent and obvious." (Def.'s Mot. at 11 (quotations omitted).) According to Royal Caribbean, the configuration of the stairs and the final step leading down to the stage floor, combined with the color differences between the final step platform and the stage floor, rendered the twelve inch rise readily observable. (*Id.* at 12.) Royal Caribbean also pointed to McDonnell's own testimony wherein he describes having watched other passengers being helped down the final step to the stage floor five days earlier when he was in Studio B for the welcome presentation. (*Id.*) In addition, Royal Caribbean submitted a photograph it claims shows McDonnell would have had a clear view of the step down on the other side of the room, which is a mirror image of the side where McDonnell was seated on the night he fell. (*Id.* at 13; Not. of Filing, ECF No. 35.) Lastly, Royal Caribbean also claims McDonnell once participated in the same event, on a prior cruise, aboard the same boat, and in the very same room and had navigated the same step without incident. (Def.'s Mot. at 13.)

However, in response, McDonnell has adduced specific facts controverting all of the issues raised by Royal Caribbean. First, according to the observations of Fore, McDonnell's expert, the final riser leading to the stage floor is not visible as one descends the stairway, nor is the twelve-inch (or more) drop discernible. (Pl.'s Resp. at 8.)[1] Additionally, as stated by Fore, the lighting arrangement around the stairs and the last step, combined with distractions during the Quest game, would have also obscured the depth of the step down to the floor. (*Id.*) Next, while McDonnell indeed acknowledged seeing other passengers having trouble navigating the step down to the stage floor five days earlier, he testified he had not realized he was in the same room on the night he fell because he had entered through a different door and the lighting

---

[1] Royal Caribbean complains Fore's statement here is nothing more than his opinion, based on a conclusory allegation. However, Fore's claim is based on what he himself states to have "noted," as well as on his "personal knowledge and [] expert review." (Fore Stmt. at 1, 26.) Without more, Royal Caribbean's objections in this regard are thus unavailing.

for the game changed the appearance of the room. (*Id.* at 3.) Moreover, Royal Caribbean mischaracterizes McDonnell's testimony regarding his previous participation in prior versions of Royal Caribbean's Quest game. While McDonnell indeed acknowledged participating in the same Quest game, on a prior cruise on the *Oasis* (McDonnell Dep. at 77:3–6.), his testimony alone does not establish, at least for the purposes of summary judgment, that he had necessarily navigated the same step down to the stage floor on the same ship. Lastly, the photograph Royal Caribbean submitted, purporting to be a view from where McDonnell may have been sitting, depicts an empty arena, with no audience members and nothing on the stage floor, with lighting that likely differs from the lighting as it appeared the night McDonnell fell. The Court, therefore, does not find the photograph sufficient to establish that the step down would have necessarily been open and obvious preceding McDonnell's fall. While the Court does not find the evidence in McDonnell's favor to be particularly strong, to find in Royal Caribbean's favor, the Court would necessarily have to weigh the evidence and make impermissible findings of fact. For now, however, McDonnell has set forth enough evidence, though just barely, upon which a reasonable jury could indeed find that the stepdown was not open and obvious prior to McDonnell's fall.

### (2) Duty to Warn

As mentioned above, a cruise-ship operator's duty of reasonable care "includes a duty to warn passengers of dangers of which the carrier knows or should know, but which may not be apparent to a reasonable passenger." *Poole v. Carnival Corp.*, No. 14-0237-CIV, 2015 WL 1566415, at *5 (S.D. Fla. Apr. 8, 2015) (Cooke, J.). Royal Caribbean contends McDonnell has not established that Royal Caribbean had either constructive or actual notice of the alleged dangerousness of the step. (Def.'s Mot. at 16.) In support of its lack of notice, Royal Caribbean points to its analysis that there had been only five reported incidents, out of 218,400 passengers, "pertaining to the subject stairs" in the three years prior to McDonnell's fall. (*Id.* at 17.) Without more, Royal Caribbean has not demonstrated the absence of a genuine issue of material fact regarding notice. It appears to the Court that more than one inference could be construed from Royal Caribbean's notice of the five (or more, according to McDonnell) reported incidents. That is, whether or not these five or so incidents suffice to put Royal Caribbean on notice would be a question for the factfinder to resolve after weighing the evidence. Royal Caribbean has not provided any support for the notion that five incidents out of 218,400 are necessarily insufficient to provide notice. Additionally, McDonnell presented Royal Caribbean's corporate representative's testimony that Royal Caribbean uses a temporary portable step

on another ship where there is a comparable step and stage-floor configuration in a similar venue. (Campos Dep. at 64:11–65:1.) The jury could infer from this that Royal Caribbean was on notice that the twelve-inch-plus drop to the stage floor was dangerous. Royal Caribbean's motion for summary judgment with respect to notice, and therefore the duty to warn, thus fails.[2]

### C. There is no genuine issue of material fact regarding whether Royal Caribbean created the dangerous condition or was involved in its design of the step.[3]

Where there is "no evidence whatsoever" that a cruise line designed an allegedly dangerous step, the cruise line cannot be held liable under a theory of negligent design. *Rodgers v. Costa Crociere, S.P.A.*, 410 F. App'x 210, 212 (11th Cir. 2010). Royal Caribbean submits McDonnell has not presented any evidence that Royal Caribbean was involved in the design of the step or area in Studio B where McDonnell fell. (Def.'s Mot. at 17.) In response, McDonnell's contention seems to be that the original plans for the Studio B room of the *Oasis* included portable steps but that those portable steps were never actually included in the final build. (Pl.'s Resp. at 5–6, 11, 13.) Although McDonnell notes Royal Caribbean could not explain why the steps were missing, he has not set forth any evidence to support the contention that the inclusion of the steps, or not, into the final build had anything to with Royal Caribbean. (*Id.* at 11.) In fact, Royal Caribbean's corporate representative testified the shipbuilder is the entity that would have made any decisions as to whether various design elements were included or not in the final build of the *Oasis*. (Campos Dep. at 113:3–21.) McDonnell offered nothing to rebut this. Without more then, McDonnell cannot establish that Royal Caribbean "actually created, participated in or approved" the alleged improper design. *Groves v. Royal Caribbean Cruises, Ltd.*, 463 F. App'x 837 (11th Cir. 2012). The Court thus grants summary judgment in Royal Caribbean's favor with respect to any claim McDonnell has regarding negligent design.

---

[2] Because Royal Caribbean's arguments regarding notice fail, the Court declines, at least at this juncture, to evaluate McDonnell's contention that even if the danger was open and obvious, Royal Caribbean still had a duty to warn.

[3] Royal Caribbean also complains, in cursory fashion, that McDonnell "would have this Court find Royal Caribbean liable for merely allowing the subject stairway to exist." (Def.'s Mot. at 18.) Royal Caribbean has not cited to, nor can the Court find, where McDonnell makes this claim and therefore the Court declines to consider the issue. In a similar vein, Royal Caribbean references McDonnell's failure-to-maintain claim. Although McDonnell clearly does raise this claim in his complaint, Royal Caribbean does not cite any legal support for its apparent contention that if a cruise ship "has policies in place to inspect and clean public areas of the ship," it is automatically absolved from any liability for a failure-to-maintain claim. Because Royal Caribbean does not further develop its argument, seemingly raised only in passing, the Court also declines evaluate this issue as well.

### 4. Conclusion

In evaluating a motion for summary judgment, the Court is not permitted to weigh the evidence or make findings of fact. Instead, the Court is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for McDonnell, the nonmoving party. Under this standard, Royal Caribbean's arguments for summary judgment based on (1) whether the step was dangerous, (2) whether that danger was open and obvious, and (3) whether Royal Caribbean was on notice of the danger both fail. Conversely, Royal Caribbean is indeed entitled to summary judgment regarding its liability premised on a theory of negligent design. Royal Caribbean's motion for summary judgment (**ECF No. 41**) is therefore **granted in part and denied in part**.

**Done and ordered** at Miami, Florida on July 14, 2017.

_____
Robert N. Scola, Jr.
United States District Judge